UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **ROSS M. BATEY** | : | **DOCKET NO. 13-cv-1172** |
| **VERSUS** | : | **JUDGE MINALDI** |
| **U.S. COMMISSIONER OF SOCIAL SECURITY** | : | **MAGISTRATE JUDGE KAY** |

## REPORT AND RECOMMENDATION

Before the court is plaintiff's petition for review of the Commissioner's denial of disabled widow's benefits. This matter has been referred to the undersigned magistrate judge for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

After review of the entire administrative record and the briefs filed by the parties, this court recommends that the Commissioner's decision should be AFFIRMED and this matter DISMISSED with prejudice.

## I.
### PROCEDURAL HISTORY

On April 12, 2010, plaintiff filed an application for widow's disability benefits alleging disability beginning on June 1, 1995[1]. Tr. 137-44. She claimed disability due to diabetes, arthritis, fibrocystic disease, allergies, hypertension, high cholesterol, and disc problems in her back. Tr. 161. The claims were initially denied on December 7, 2010. Tr. 69-72. Plaintiff requested and was granted an administrative hearing which was held on October 4, 2011. Tr. 24-57. Plaintiff was represented by an attorney at the hearing.

---

[1] Plaintiff later amended the date of onset to July 26, 2010. Tr. 132.

On April 26, 2012, the Administrative Law Judge ("ALJ") issued an unfavorable decision. Tr. 9-19. The ALJ found that plaintiff was not disabled because she retained the residual functional capacity to perform medium work with certain limitations and that jobs existed in significant numbers in the national economy that plaintiff could perform. *Id.*

Plaintiff filed a request for appellate review of this decision and on March 30, 2013, the Appeals Council denied her request for review. Tr. 1-6. On May 23, 2013, plaintiff filed suit in this court appealing the determinations of the Commissioner. Doc. 1.

## II.
### FACTS AND MEDICAL EVIDENCE

*A. Facts*

Plaintiff was fifty-six years old on the date of the hearing which was held on October 4, 2011. Tr. 27. She testified that she completed the ninth grade and later earned her GED. *Id.* Her husband died on February 19, 2010. Tr. 32. He worked as a truck driver and she rode with him and worked as his bookkeeper. Tr. 29. She has not worked since his death. *Id.* She tried to find a part-time job after her husband died but was not successful. Tr. 50-51. She stated that she did not think she could perform full-time work because of "her body" and anxiety. Tr. 52. When she was younger she worked as a waitress. Tr. 29. She stated that she lives alone and has a son and daughter-in-law that live about a mile away that help her by taking her to doctors' appointments and cooking for her. Tr. 33-34.

She testified that she has diabetes and hypertension which she is treating with medication. Tr. 34, 47. She also has problems with anxiety which began after her husband died. She is prescribed Lexipro and Xanax which she takes when she feels a panic attack coming on. Tr. 36-38. She testified that she suffers from arthritis in her neck, back, elbows, wrist, thigh, knees, ankles, and toes. Tr. 38-39. She has pain in her back which she stated is about a seven or eight

on a scale of one to ten when she does not take her medication and is a four to five with medication. Tr. 41. She also has pain and swelling in her hands which she rated as an eight. She stated that she cannot write letters anymore and has trouble with buttons and zippers. Tr. 42. She suffers from numbness in her hands, feet and right thigh which she stated is caused by her diabetes. Tr. 43.

Plaintiff stated that on bad days, which she experiences about three to four times a week, she does not do anything or go anywhere. On a typical day she can sit for about thirty minutes and can walk a couple of blocks. She does not lift anything over ten pounds. Tr. 45. She is able to do housework but does not do it every day. Tr. 46-47. Some of her medications make her sleepy and she takes a nap from thirty minutes to an hour every day. Tr. 48.

### B. Medical Evidence

#### 1. W.O. Moss Regional Medical Center

Plaintiff's medical records from Moss Regional show that she has been treated for high cholesterol, hypertension, and diabetes since 2006. *See generally* Exhibits 2F and 7F. Following her alleged date of onset, July 26, 2010, plaintiff was seen at Moss Regional in the emergency room on August 6, 2010, complaining of back pain. She reported a history of chronic back pain and stated that she was picking up a bag of mulch when she hurt her lower back. She was discharged with instruction to follow up with her primary care physician. Tr. 406-11.

In September of 2010 she reported to the emergency room complaining that she was "dizzy and feeling funny." Her discharge assessment was anxiety and she was given Lexapro. Tr. 399-404. A CT scan of her head taken on September 29, 2010, showed no acute intracerebral changes. Tr. 434. On October 11, 2010, she again reported to the emergency room with complaints of

"feeling faint and weak" for two hours.  A chest x-ray taken on that date was negative.  She was discharged with instructions to undergo a stress test and Holter monitoring.  Tr. 392-98, 432.

A stress test was administered on October 19, 2010.  Plaintiff did not experience any chest discomfort or arrhythmia with exercise and the results showed fair functional capacity.  Tr. 431.  A November 5, 2010, echocardiogram was normal.  Tr. 416.

Plaintiff received follow up care for her diabetes, hypertension, and high cholesterol on October 15, 2010, December 6, 2010, March 14, 2011, June 13, 2011, and September 19, 2011.  Tr. 391, 387, 476, 475, 467.

On August 26, 2011, plaintiff was seen in the emergency room complaining that she had choked on food the night before and was having difficulty breathing and swallowing.  An x-ray of her neck was normal except that there was mild to moderate findings of spondylosis at C5-C6 and anterior bony lipping of vertebral body margins at C5 through C7.  A chest x-ray was normal.  Tr. 468-73, 489-90.

On September 26, 2011, plaintiff underwent an upper gastrointestinal series of x-rays with normal results.  Tr. 488.

### 2. *University Medical Center*

In 2008 plaintiff underwent surgery at University Medical Center for a nasal obstruction.  Tr. 251-75.  In January of 2011 she was seen in the emergency room complaining of left leg pain and ringing in her ears.  An x-ray of her left femur showed no abnormalities.  An ultrasound of her left lower extremity showed no evidence of deep vein thrombosis.  Tr. 455-65.

On August 4, 2011, plaintiff reported to the emergency room with complaints of chronic back pain for the past two years with exacerbating symptoms since two days prior.  She requested

an MRI of her lower back.  She was given pain medication and muscle relaxers and advised to follow up with her primary care physician.  Tr. 491-501.

> 3. *Southern Medical Group, Inc., Valy Fontil, M.D.*

On September 18, 2010, plaintiff underwent a consultative physical examination performed by Dr. Valy Fontil.  Plaintiff's chief complaint was hand and foot numbness.  She gave a history of disk herniation and back pain with radiation to the left leg which is worse with prolonged sitting or walking.  She reported that she was independent with her activities of daily living.

Dr. Fontil noted that plaintiff ambulated without assistance, and she denied knee, shoulder, or neck pain. Plaintiff had a normal gait, could rise from a sitting position without assistance, was able to stand on her tiptoes, heels, and tandem walk without any problems.  She was able to bend and squat without difficulty.  Plaintiff's grip strength was 5/5 with adequate fine motor movement, dexterity, and ability to grasp objects.  Her motor strength was 5/5 in all muscle groups.  She was alert and oriented to time, place, and situation.  Dr. Fontil reported that plaintiff did not appear depressed or anxious.  Her recent and remote memory was intact and she possessed good insight and cognitive function.

Dr. Fontil concluded that plaintiff had probable diabetic neuropathy and back pain secondary to muscle strain.  He opined that plaintiff should be able to sit, walk, and/or stand for a full workday, lift/carry objects without limitation, hold a conversation, respond appropriately to questions, and carry out and remember instructions.  Tr. 377-79.

> 4. *G. Jon Haag, Psy. D.*

Plaintiff underwent a consultative mental status evaluation conducted by clinical psychologist G. Jon Haag on October 29, 2010.  Plaintiff reported that she had never been

diagnosed with a mental health problem. She stated that she was recently prescribed Lexapro and Xanax by any emergency room physician. She reported that she recently experienced two to three panic attacks within the past two months. Her symptoms included heavy breathing, light headedness, chest pain, and dizziness. She also reported having crying spells four to five times per week.

Plaintiff's social and adaptive functioning were reviewed. Dr. Haag opined that she did appear to have impairment in social functioning. He noted that she got along well with others but her anxiety had decreased her functioning. Plaintiff reported that her mother and husband had both passed away within one year. Plaintiff's activities of daily living were not impaired. She is able to care for her personal hygiene, pay bills, take medication, drive, and cook. She has to lay down several times a day because she feels dizzy and light headed.

Dr. Haag noted that plaintiff's hygiene and grooming were appropriate and she was cooperative. She did not appear depressed, denied suicidal ideation, and there was no evidence of psychosis. He found that she was moderately anxious but her memory and concentration were not impaired. She could perform simple math operations with mild difficulty and she could understand and follow simple instructions. Her intellectual functioning was expected to be average.

Dr. Haag's diagnostic impression was panic disorder and adjustment disorder with mixed anxiety and depression. He opined that based on the information presented she was capable of handling funds and her prognosis for improvement was good.

  5.  *Joseph Tramontana, Ph.D.*

On November 23, 2010 Dr. Tramontana performed a psychiatric review and opined that any alleged mental impairment was non-severe and that there was no need for a mental residual functional capacity assessment. Tr. 382.

### 6. *Quentin D. Romero, M.D.*

Dr. Romero saw plaintiff on two occasions. On March 4, 2010, his records indicate that plaintiff was a walk-in patient who complained of being depressed, stressed, not coping well, and not sleeping well. She gave a history of hypertension, diabetes, high cholesterol, arthritis and GERD. He concluded that she was suffering from "depression/stress" and prescribed Valium. Tr. 452-54. On December 14, 2010, plaintiff described her two episodes of panic attacks and stated that she was treated at Moss Regional and prescribed Xanax and Lexapro and was "feeling better." He diagnosed arthritis and anxiety. Tr. 449-51.

### 7. *Tulane Ortho Clinic*

Plaintiff was seen on September 23, 2011 for an orthopedic evaluation at the Tulane Ortho Clinic. Dr. Brent McCarty noted that she appeared to be very anxious as she had recently lost her mother and husband. His report states that her main complaints were left sciatica with pain starting in her lumbar spine and radiating down to the top of her left foot. She also had pain in her right knee and in both hands. Plaintiff reported that she has had episodes of anxiety attacks recently. She reported having problems with arthritis and requested an MRI of her spine and a possible neurological consult. Dr. McCarty noted that plaintiff was not limited by any of these pains in her daily life. Plaintiff relayed her past medical history which included anxiety, diabetes, hypertension, high cholesterol, allergies, and GERD.

Upon physical examination Dr. McCarty palpated both hands and joints and found no deformity. He noted no tenderness in any joints, full range of motion, no erythema, no edema, no induration, and no crepitus. He examined her right knee which he found neurovascularly intact, sensation was intact to light touch and muscle function was intact and she had full range of motion. He found some palpable crepitus in her knee but noted it would not limit her daily activities. A

bilateral leg raise test was negative, and Dr. McCarty found no tenderness to palpation in plaintiff's lumbar spine. He noted no palpable step-offs, no point tenderness, and no deficits or sensation.

Dr. McCarty concluded that plaintiff has some pain from arthritis in her right knee and a lower spine x-ray (from an outside hospital) revealed some degenerative changes of her lower spine. However, he opined that there was no indication at the time for an MRI or neurosurgery consult. He advised her to follow up in three months and continue on her arthritis medication. Tr. 504-05.

Plaintiff returned on January 6, 2010, and had an x-ray on her right knee which was normal and an x-ray of her lumbar spine which showed mild degenerative changes. 507-08.

    8. *Maria Pons, M.D.*

Dr. Pons completed a physical residual functional capacity assessment on October 12, 2010. She determined that plaintiff could occasionally lift fifty pounds, frequently lift twenty-five pounds, stand and walk for six hours in an eight-hour work day, sit for six hours in an eight-hour work day, and had unlimited push and pull ability. Plaintiff had no postural, manipulative, visual, communicative, or environmental limitations. She opined that plaintiff maintained the ability to perform medium work. Tr. 65-66, 381.

### III.
### STANDARD OF REVIEW

"In Social Security disability cases, 42 U.S.C. § 405(g) governs the standard of review." *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002) (citing *Frith v. Celebrezze*, 333 F.2d 557, 560 (5th Cir. 1964)). The court's review of the ultimate decision of the Commissioner is limited to determining whether the administrative decision is supported by substantial evidence and whether the decision is free of legal error. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005) (citing *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)). "Substantial evidence is 'such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Greenspan*, 38 F.3d at 236). "It is 'more than a mere scintilla and less than a preponderance.'" *Id.* (quoting *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002)). It is "such relevant evidence as a reasonable mind might accept to support a conclusion. It must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).

In applying the substantial evidence standard, the reviewing court critically inspects the record to determine whether such evidence is present, "but may not reweigh the evidence or substitute its judgment for the Commissioner's." *Perez*, 415 F.3d at 461 (citing *Greenspan*, 38 F.3d at 236; *Masterson*, 309 F.3d at 272). Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). "Conflicts of evidence are for the Commissioner, not the courts, to resolve." *Perez*, 415 F.3d at 461 (citing *Masterson*, 309 F.3d at 272).

## IV.
### LAW AND ANALYSIS

#### A. *Burden of Proof*

The burden of proving that he or she suffers from a disability rests with the claimant. *Perez*, 415 F.3d at 461. The Social Security Administration defines a "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" lasting at least twelve months. 42 U.S.C. § 423(d)(1)(A).

In this case, claimant must additionally show that she is the widow of a deceased worker, has attained the age of fifty, is unmarried, and has a disability that began before the prescribed

period. The prescribed period ends with the month before the month in which the claimant attains the age of sixty, or, if earlier, either seven years after the worker's death or seven years after the widow was last entitled to survivor's benefits, whichever is later. 42 U.S.C. § 401(e), 20 C.F.R. § 404.335.

> The ALJ conducts a five-step sequential analysis to evaluate claims of disability, asking:
>
> > (1) whether the claimant is currently engaged in substantial gainful activity (whether the claimant is working); (2) whether the claimant has a severe impairment[2]; (3) whether the claimant's impairment meets or equals the severity of an impairment listed in 20 C.F.R., Part 404, Subpart P, Appendix 1; (4) whether the impairment prevents the claimant from doing past relevant work (whether the claimant can return to his old job); and (5) whether the impairment prevents the claimant from doing any other work.

*Id.* (citing 20 C.F.R. § 404.1520). If the claimant meets the burden of proof on the first four steps, the burden shifts to the Commissioner on the fifth step to show that the claimant can perform other substantial work in the national economy. *Id.* "Once the Commissioner makes this showing, the burden shifts back to the claimant to rebut this finding." *Id.* (quoting *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000)).

The analysis ends if the Commissioner can determine whether the claimant is disabled at any step. *Id.* (citing 20 C.F.R. § 404.1520(a)). On the other hand, if the Commissioner cannot make that determination, he proceeds to the next step. *Id.* Before proceeding from step three to step four, the Commissioner assesses the claimant's residual functional capacity (RFC). *Id.* "The

---

[2] A severe impairment or combination of impairments limits significantly a claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1521(a). Basic work activities are defined at 20 C.F.R. § 404.1521(b). The term severe is given a *de minimis* definition as found in *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985). According to *Stone*, "[a]n impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." 752 F.2d at 1101 (quoting *Estran v. Heckler*, 745 F.2d 340, 341 (5th Cir. 1984)).
  If a severe impairment or combination of impairments is found at step two, the impairment or combined impact of the impairments will be considered throughout the disability determination process. 20 C.F.R. §§ 404.1520, 404.1523. A determination that an impairment or combination of impairments is not severe will result in a social security determination that an individual is not disabled. *Id.*

claimant's RFC assessment is a determination of the most the claimant can still do despite his physical and mental limitations and is based on all relevant evidence in the claimant's record." *Id.* at 461-62 (citing 20 C.F.R. § 404.1545(a)(1)).  Specifically, in determining a claimant's RFC, an ALJ must consider all symptoms, including pain, and the extent to which these symptoms reasonably can be accepted as consistent with the objective medical evidence and other evidence. 20 C.F.R. § 404.1529; Social Security Ruling 96-8p.  The ALJ must also consider any medical opinions (statements from acceptable medical sources) that reflect judgments about the nature and severity of impairments and resulting limitations.  20 C.F.R. § 404.1527, Social Security Rulings 96-2p, 96-6p.  The claimant's RFC is considered twice in the sequential analysis—at the fourth step it is used to determine if the claimant can still do his or her past relevant work, and at the fifth step the RFC is used to determine whether the claimant can adjust to any other type of work.  *Perez*, 415 F.3d at 462 (citing 20 C.F.R. § 404.1520(e)).

Here, the ALJ found that plaintiff was a widow of a deceased worker, had attained the age of 50, and was unmarried.  Her prescribed period began on February 19, 2010, the date her husband died so she had to establish a disability on or before March 31, 2015 in order to be entitled to widow's benefits.  The ALJ found that plaintiff was not disabled because she had the RFC to perform medium work with certain limitations and there were jobs that existed in significant numbers in the national economy that she could perform.

### B. *Plaintiff's Claims*

In her appeal plaintiff asserts that substantial evidence does not support the ALJ's decision. She argues that (1) the evidence does not support the ALJ's determination that plaintiff had the RFC to perform medium work, and (2) the ALJ should have found plaintiff disabled under the Medical-Vocational Guideline (Grid) Rule 203.02.

*1. Does substantial evidence support an RFC for medium work?*

Plaintiff argues that there is no evidence in the record to support the ALJ's findings regarding plaintiff's ability to lift, carry, sit, and stand. She asserts that the consultative examiner, Dr. Fontile, did not give an opinion on her ability to lift on a frequent basis. She submits that the medical evidence supports her various medical problems and her limitations due to pain. Thus, she concludes that the ALJ erred when he concluded that plaintiff maintained the capacity to perform medium work.

In response, the Commissioner argues that substantial evidence supports the ALJ's RFC determination. The Commissioner points to the consultative examiner's report which specifically stated that plaintiff "should be able to sit, walk, and/or stand for a full workday, *lift/carry objects without limitation*, hold a conversation, respond appropriately to questions, carry out and remember instructions." Tr. 379. (emphasis added). The Commissioner argues that this report along with the other record evidence supports the ALJ's finding. We agree.

In addition to Dr. Fontile's report which found that plaintiff had no restrictions on lifting, an RFC prepared by Dr. Pons determined that plaintiff could occasionally lift 50 pounds, frequently lift 25 pounds, stand and walk for 6 hours in an 8 hour work day, sit for 6 hours in an 8 hour work day, and had unlimited push and pull ability. Dr. Pons found that plaintiff had no postural, manipulative, visual, communicative, or environmental limitations and she opined that plaintiff maintained the ability to perform medium work. Tr. 65-66, 381.

Based on this medical evidence of record, it is evident that substantial evidence supports the ALJ's determination that plaintiff was capable of performing medium work.

*2. Does plaintiff meet Medical-Vocational Guideline (Grid) Rule 203.02?*

Plaintiff maintains that the ALJ should have found her disabled under Medical Vocational Guideline (Grid) 203.02. She maintains that the testimony of the VE who stated that an individual of similar age, education, and with similar impairments could perform other work was irrelevant because according to the Grid she should have been found to be disabled. The Commissioner argues that plaintiff's reliance on Grid 203.02 is without merit because she does not fall within the criteria of this Grid. The Commissioner asserts the ALJ properly applied Grid Rule 203.14 as a basis for finding that plaintiff was not disabled.

At Step 5 of the sequential process, when determining whether or not plaintiff could make an adjustment to other work, the ALJ stated:

> If the claimant had the residual functional capacity to perform the full range of medium work, Medical-Vocational [Grid] Rule 203.14 would direct a finding of "not disabled." However, the claimant's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations. To determine the extent to which these limitations erode the unskilled medium occupational base, I asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. The vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative occupations, such as: unskilled medium jobs of dining room attendant, … and hospital cleaner.

Tr. 8-19.

The Grid which plaintiff relies on, Grid Rule 203.02, applies to a person who possesses an RFC for medium work, is "closely approaching retirement age," with no previous work experience, and a limited education or less. 20 C.F.R. pt. 404, subpt. P, App. 2. A person is considered "closely approaching retirement age" when he or she is aged 60 or older. 20 C.F.R. § 404.1563(e), 20 C.F.R. § 404.1568(4). If an individual meets these criteria, the Grid directs a finding of not disabled.

Plaintiff was born on April 30, 1955. Tr. 27. On the alleged date of disability, July 26, 2010, she was fifty-five years old. On the date of the hearing, October 4, 2011, she was fifty-six years, old and on the date of the ALJ's decision, April 26, 2012, she was fifty-seven years old. Thus, plaintiff would clearly not be defined as an individual "closely approaching retirement age."

The regulations define a person aged 55 or older as a "person of advanced age." 20 C.F.R. § 404.1563(e). At all relevant times, plaintiff would be considered a "person of advanced age." The Grid that the ALJ applied, 203.14, applies to an individual who possesses an RFC for medium work, is of "advanced age," with unskilled or no previous work experience, and a high school education or more. 20 C.F.R. pt. 404, subpt. P, App. 2. Thus, the ALJ properly considered and relied on the Grid 203.14 as a framework for his decision. *See* SSR 85-15. If plaintiff would have met each criteria of this Grid, the Grid would dictate a finding of not disabled. However, the analysis in this case did not stop here. Because he found that plaintiff was not capable of performing all or substantially all of the exertional demands of medium work[3], the ALJ was required to consider VE testimony in order to determine the extent to which plaintiff's limitations eroded the occupational base. *See Carey v. Apfel,* 230 F.3d 131, 145 (5th Cir.2000). Thus, we find that the ALJ properly relied on the testimony of the VE in making his determination that plaintiff was not disabled.

We find plaintiff's argument without merit.

---

[3] The ALJ found plaintiff had mild limitations in her daily activities, social interaction, concentration, persistence, and pace but with no periods of decompression. He also found that she could sit/stand/walk for a total of six hours in an eight-hour work day and could understand and follow simple instructions. Tr. 15.

**CONCLUSION**

Based on the foregoing, we find substantial evidence of record and relevant legal precedent support the ALJ's decision that plaintiff is not disabled. It is therefore RECOMMENDED that the ALJ's decision be AFFIRMED and this matter be DISMISSED with prejudice.

Under the provisions of 28 U.S.C. §636(b)(1)(C), the parties have fourteen (14) days from receipt of this Report and Recommendation to file any objections with the Clerk of Court. Timely objections will be considered by the district judge prior to a final ruling.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING ON APPEAL, EXCEPT UPON GROUNDS OF PLAIN ERROR, THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT.**

THUS DONE this 25th day of August, 2015.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE